UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

CHAD MICHAEL VANHUIZEN and PATRICIA
LYN VANHUIZEN aka PATTI LYNN
VANHUIZEN,

        Debtors.

Case No. DG 07-06981
Hon. Scott W. Dales
Chapter 7

_____/

LAKE ODESSA LIVESTOCK AUCTION, INC.,

        Plaintiff,

Adversary Proceeding
No.  07-80656

v.

CHAD M. VANHUIZEN,

        Defendant.

_____/

**MEMORANDUM OF DECISION AFTER TRIAL**

This matter comes before the court upon the Complaint to Determine the Dischargeability of Certain Debts filed by Lake Odessa Livestock Auction, Inc. ("LOLA") pursuant to 11 U.S.C. § 523(a)(6). LOLA alleges that Chad VanHuizen ("Defendant" or "VanHuizen") sold or otherwise disposed of dairy cows encumbered by LOLA's security interest, without remitting the proceeds to LOLA.  Although LOLA has established VanHuizen converted the cows, I nevertheless conclude VanHuizen did not act willfully or maliciously.  Therefore, I will enter judgment in favor of VanHuizen.

This Memorandum of Decision constitutes my findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052.

## A.  Jurisdiction

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334(a) and (b). Because this is a core proceeding within the scope of 28 U.S.C. § 157(b)(2)(I), I am authorized to enter a final judgment.

## B.  Governing Law

The Bankruptcy Code excepts from discharge debts that arise from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Because Congress inserted the conjunction "and" between the words "willful" and "malicious," a court should except a debt from discharge under § 523(a)(6) only if both of these standards are met. Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463 (6th Cir. 1999) (the absence of either the willful or malicious requirement from § 523(a)(6) creates a dischargeable debt).

The Supreme Court specifically addressed the "willful" requirement of § 523(a)(6), stating:

> The word "willful" in (a)(6) modifies the word "injury," indicating that
> nondischargeability takes a deliberate or intentional injury, not merely
> a deliberate or intentional act that leads to injury. Had Congress meant
> to exempt debts resulting from unintentionally inflicted injuries, it might
> have described instead "willful acts that cause injury." Or, Congress might
> have selected an additional word or words, i.e., "reckless" or "negligent,"

to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act," not simply "the act itself."

Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Later, the Sixth Circuit Court of Appeals, in addressing this holding, further refined the willful element by explaining that "unless 'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." Markowitz, 190 F.3d at 464; see also Kennedy v. Mustaine (In re Kennedy), 249 F.3d 576, 580 (6th Cir. 2001).

In view of these authorities, I may only find VanHuizen has acted "willfully" for purposes of § 523(a)(6) if I can determine that he acted with the intent to cause injury, or that he was substantially certain an injury would occur.  A technical conversion of LOLA's collateral is not enough. Davis v. Aetna Acceptance Co., 293 U.S. 328 (1935); In re Cummins, 11 B.R. 222 (Bankr. E.D. Tenn. 1981); In re McCloud, 7 B.R. 819 (Bankr. M.D. Tenn. 1980).  Indeed, I advised the parties in a pretrial order that "proving only that Defendant breached the [Contracts] will not render the Debt nondischargeable, because a discharge under 11 U.S.C. § 727 makes debts arising from simple breaches of contract generally unenforceable against the debtor or his property." See Pretrial Order dated April 8, 2008, at p. 4.  Under § 523(a)(6), LOLA has the burden of proving, by a preponderance of the evidence, that VanHuizen acted with the intent to cause injury or that he was substantially certain the injury would occur. Grogan v. Garner, 498 U.S. 279, 291 (1991).

## C. The Trial and the Evidence

The trial on LOLA's complaint took place on October 22, 2008 in Lansing, Michigan. LOLA appeared through counsel; VanHuizen appeared *pro se*.[1]

As the trial commenced, the Plaintiff's counsel made an oral motion for "summary judgment" premised mainly upon the Defendant's failure to participate in discovery, and his failure to file witness and exhibit lists.[2] In response to the oral motion, I permitted VanHuizen to testify because his failure to identify himself as a witness could not have resulted in unfair surprise.

At trial, the Plaintiff relied mainly on the Defendant's pretrial admissions under Fed. R. Civ. P. 36,[3] and the testimony of LOLA's president, Vern Ledenga ("Ledenga"). The Plaintiff's evidence established that VanHuizen entered into three separate contracts to purchase 125 dairy cows from LOLA between January 19, 2006 and July 28, 2006. (Pl. Ex. 1).[4] The evidence also established that VanHuizen bought the cows on credit and granted LOLA a security interest to secure his obligations. (Pl. Ex. 1). He made some payments on the Contracts but later defaulted. (Pl. Ex. 2). Although LOLA assigned the Contracts to United Bank of Michigan (the "Bank"), the testimony of LOLA's president established that the Bank reassigned the Contracts to LOLA after VanHuizen's default.

---

[1] VanHuizen, through counsel, filed an answer and discovery plan, and participated in a pretrial conference. Prior to trial, however, I permitted his counsel to withdraw. He later explained that he could not afford to pay for his defense, so he appeared at the trial without benefit of counsel.

[2] The oral motion is more akin to one under Fed. R. Civ. P. 37(d), than a motion for summary judgment under Fed. R. Civ. P. 56.

[3] The Plaintiff served the Defendant with several requests to admit which the Defendant failed to deny. At trial, the Plaintiff offered and I admitted the Request to Admit as Plaintiff's Exhibit 1.

[4] I will refer to the contracts collectively as the "Contracts."

4

The evidence also establishes that VanHuizen sold an unspecified number of cows without remitting the sale proceeds, in violation of LOLA's rights as secured party under the Contracts. From this evidence, I find that LOLA had superior possessory rights in the cows after VanHuizen's default, and that VanHuizen deprived LOLA of these rights by selling the cows without LOLA's permission. Under Michigan law, VanHuizen's failure to satisfactorily account for the Plaintiff's collateral after default almost certainly amounts to conversion.

However, the law governing exceptions to discharge is the United States Bankruptcy Code, not state law, and under the Bankruptcy Code, technical state-law conversion does not give rise to a nondischargeable debt *per se*. McIntyre v. Kavanaugh, 242 U.S. 138 (1916); Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934). As the Supreme Court of the United States explained, "not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts ... do not suffice to establish that a resulting injury is willful and malicious." Kawaauhau, 523 U.S. at 63-64.

Accordingly, although LOLA has established that VanHuizen converted its collateral and that LOLA suffered damage as a result,[5] it must still prove that VanHuizen injured LOLA willfully and maliciously within the meaning of § 523(a)(6).

---

[5] LOLA's evidence of the amounts due under the Contracts was less than clear. Indeed, Plaintiff's Exhibit 2, which appears to be VanHuizen's loan history for each of the Contracts, shows that two of the Contracts were paid in full. I infer from the fact that the Bank prepared these loan histories, that the zero balance reflects LOLA's payment to the Bank, rather than VanHuizen's payment to either. I would find, therefore, that VanHuizen owes LOLA $33,179.81 on account of the Contracts. This amount, however, does not necessarily represent the amount of the debt attributable to the alleged conversion because damages for conversion are measured by loss of value of the converted property rather than the debt secured by the converted property. I attribute this shortcoming in Plaintiff's proof to the Defendant's failure to participate in discovery. In any event, the amount of damages is immaterial given my conclusion that VanHuizen did not act willfully or maliciously.

Direct evidence of intent is difficult to establish under § 523(a)(6), but where a debtor converts his creditor's collateral, the creditor may establish the "willful" requirement by proving two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew his conduct would cause injury to those rights.  See Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley), 235 B.R. 651, 657 (10th Cir. BAP 1999); Call Federal Credit Union v. Sweeney (In re Sweeney), 264 B.R. 866, 872 (Bankr. W.D. Ky. 2001).  The law raises a rebuttable presumption that the debtor knew his actions would harm the creditor's lien rights if the creditor proves that "the debtor, despite having knowledge as to the implications of the security agreement, took no action to protect the creditor's interest therein." First Citizens National Bank v. Sherwood, 2003 WL 22871603, at 4 (Bankr. W.D. Tenn. 2003); see also Vulcan Coals v. Howard, 946 F.2d 1226 (6th Cir.1991); In re Boren, 47 B.R. 293, clarified, 50 B.R. 315 (Bankr. W.D. Ky. 1985) (farmer sold crop that secured loan, failed to use proceeds to repay loan, and falsely told creditor he had not sold crop).

VanHuizen testified he did not know LOLA had a security interest in the cows because he never read the Contracts. He also testified that the Contracts contained blanks when he signed them. Ledenga's testimony corroborated this.  I find, from VanHuizen's testimony and demeanor, that he is an earnest dairy farmer more interested in making a living for his family than reading the fine print.  It appears to me the parties routinely signed the Contracts without negotiating terms other than price, used the Bank's forms, and left blanks for the Bank to fill in, simply to get the deal done. I am not condoning such practices, only acknowledging them.

VanHuizen testified that some of the cows he purchased from LOLA became worthless as dairy cows, and he sold them as less valuable meat cows through LOLA and another auction house. He also testified he has sold cows that he purchased from sellers other than LOLA. He did admit, however, he sold some of the cows he bought from LOLA, and used the proceeds to pay debts other than his debt to LOLA. He explained he needed the money to care for his young family.

Although Michigan law generally holds contracting parties liable for contracts they sign even if they sign without reading them, Wierengo v. American Fire Insurance Co., 98 Mich. 621 (1894), I am not willing to conclude that the law charges contracting parties with knowledge of the document's contents for purposes of establishing a specific intent or scienter, such as § 523(a)(6) requires. Stated differently, though VanHuizen's signature on the Contracts estops him from denying that he granted LOLA a security interest, his signature does not establish as a matter of federal law that he *knew* he created a security interest or, for that matter, understood the implications of having created one. I credit VanHuizen's testimony, including his testimony that he was ignorant of LOLA's security interest.

The cases that rely on the presumption of willfulness when a debtor takes no action to protect the creditor's lien rights do not help LOLA prove its case because this presumption arises only when the debtor understands the implications of the security interest. Because I have found that VanHuizen did not understand the implications, indeed did not know he created a security interest, the presumption of willfulness does not arise, and even if it had, his credible testimony rebutted it. See In re Best, 109 Fed. Appx. 1 (6th Cir. 2004).

7

VanHuizen also testified he used some of the proceeds to pay other living expenses for himself, his wife and three children. In view of this testimony, which I credit, I find VanHuizen did not sell the cows or use the proceeds willfully and maliciously. In re Hammitt, 289 B.R. 681, 692 (Bankr. C.D. Ill. 2001) (because the Debtors' primary intent in converting the secured machinery equipment and cattle was to keep their cattle business afloat rather than to injure the creditor, the debtors' conduct cannot be classified as "willful and malicious" under § 523(a)(6)); In re Crump, 247 B.R. 1, 6-7 (Bankr. W.D. Ky. 2000)("no evidence that the debtor had any intent to do harm"); In re Tomlinson, 220 B.R. 134 (Bankr. M.D. Fla. 1998) (Plaintiff failed to show that Defendant intended to deceive or defraud when the weight of evidence suggests Defendant merely sought to maintain corporation as an ongoing enterprise.)

## D. Conclusion

Having heard the testimony and reviewed the exhibits, I find LOLA failed to prove that the debt arising from the admitted conversion of the dairy cows was willful and malicious within the meaning of § 523(a)(6) because I do not believe VanHuizen acted with the intent to cause injury, or that he was substantially certain an injury would occur. In some sense, of course, every debtor who pays one creditor over another inflicts injury on the unpaid creditor, but the Bankruptcy Code does not punish such discrimination by excepting the unpaid debt from discharge. Therefore, VanHuizen's debt to LOLA will be discharged in this bankruptcy proceeding.

Though VanHuizen will not be obligated to repay LOLA, nothing in this opinion should be construed as preventing him from voluntarily repaying the debt as 11 U.S.C. § 524(f) allows.

The court will prepare a judgment dismissing the Complaint with prejudice.

Dated: November 4, 2008
at Grand Rapids, Michigan

Scott W. Dales
United States Bankruptcy Judge